Sepedra **HARRISON**, Appellant,

v.

**Robert E. RUBIN, Secretary of the Treasury, United States Department of the Treasury, Appellee.**

No. 98–5019.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 29, 1999.

Decided May 7, 1999.

Gregory L. Lattimer argued the cause and filed the briefs for appellant.

Eric M. Jaffe, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney, Mark E. Nagle and R. Craig Lawrence, Assistant U.S. Attorneys.

Before: EDWARDS, Chief Judge, GINSBURG and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Appealing the dismissal of her employment discrimination case, appellant argues that the district court abused its discretion in denying her motion to amend her complaint to correct an erroneous statutory citation. She also argues that the district court erred in finding her claims of race discrimination and retaliation barred by a settlement agreement. We agree with appellant regarding the motion to amend: Absent evidence of prejudice, delay—the only reason given by the district court—cannot justify denying a motion to amend to clarify the legal basis for a complaint. Unable to assess on appeal the extrinsic evidence necessary to determine precisely which administrative complaint and which incidents were in fact covered by the settlement agreement, we reverse the dismissal of appellant's Title VII claims and remand to the district court for further proceedings.

## I

Appellant Sepedra Harrison, an African–American female employee of the Internal Revenue Service, began working in 1991 as a secretary for Michael Sincavage, the Chief of the Office of Disclosure. In 1992, she filed a complaint with the agency's EEO office, alleging that she had been passed over for a promotion in favor of a less experienced white woman. Several months later, while Harrison's complaint was pending, Sincavage detailed her to the Tax Check Unit where, according to Harrison, the work was more stressful and her mental and physical health began to deteriorate. She claims that although she made her health problems known to Sincavage and others and repeatedly a requested a transfer out of the Tax Check Unit, the agency refused until she was "forced to the point of a breakdown." Complaint ¶ 19. Yet nonminority employees suffering similar health problems, she says, were transferred immediately.

In informal and formal EEO complaints, Harrison alleged that during her detail to the Tax Check Unit, as well as after her September 1993 transfer back to the Office of Disclosure, Sincavage and others harassed her, threatened to discipline her, and subjected her to discriminatory working conditions. Under IRS EEO procedures, before the agency will accept a formal complaint for investigation, an employee must file an informal complaint; informal complaints require "informal pre-complaint EEO counseling." Dep't of the Treasury, Individual Complaint of Employment Discrimination (notice on form).

Exactly how many formal and informal complaints Harrison filed during this period and precisely what they alleged is not at all clear. Her affidavit and interrogatory answers refer to a September 20 informal complaint, which became formal on November 22, and a December 1 informal complaint, which apparently concerned retaliation for making the first complaint formal. Yet Harrison's reply brief accuses

the government of "erroneously" stating that she filed EEO complaints on November 22 and December 1 (the same dates mentioned in her own affidavit and interrogatory answers). And Harrison's reply brief mentions for the first time a November 15 informal complaint.

Because of the confusion about Harrison's administrative complaints, and because only the November 15 complaint was included in the record, we asked the parties at oral argument to give us copies of all relevant complaints. In response, they submitted the September 20 informal complaint, the November 22 formal complaint, and another copy of the November 15 informal complaint. However, they did not submit a December 1 complaint, even though they had repeatedly referred to one, or a pre-November 15 formal complaint, even though the November 15 complaint alleges retaliation for having filed an earlier formal complaint.

While Harrison's various complaints were being investigated, the IRS and Harrison signed a settlement agreement dated January 6, 1994. Titled "Precomplaint Agreement in the Discrimination Complaint of Sepedra E. Harrison," the agreement does not indicate which complaints or incidents it resolves. It provides simply: "It is hereby agreed by the undersigned representative for the Internal Revenue Service and Sepedra E. Harrison that the following constitutes a full and complete settlement of the alleged issue of discriminated [sic] based on Race, Sex and Retaliation." Precomplaint Agreement in the Discrimination Complaint of Sepedra E. Harrison 1 (Jan. 6, 1994). In return for Harrison's promise "[n]ot to pursue the matter, which is stated above, in the EEO informal or formal process" and "[n]ot to institute any further legal, equitable and/or administrative appeals on the matter(s) raised," *id.*, the agency agreed to transfer Harrison to another position in the IRS's EEO and Diversity Office. Following that transfer, the agency's EEO office processed Harrison's November 22 formal

complaint, eventually dismissing it because it "concerns the same matters that were the subject of another complaint that was settled." Letter from Michael Morgan–Gaide, Director, Regional Complaint Center, Department of the Treasury, to Gregory L. Lattimer, Attorney for Sepedra Harrison (Sept. 11, 1995).

Harrison then filed suit in the United States District Court for the District of Columbia. Count one of her complaint alleged that the agency's delay in transferring her violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (1994). Count two alleged that the delay in granting her a transfer amounted to disparate treatment in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.* Count three alleged that the agency retaliated against her for filing the EEO complaints, also in violation of Title VII. The retaliation count alleged, among other things, a physical assault that Harrison claims occurred the day after the settlement agreement was signed. *See* 12/16/97 Tr. at 3–4 (quoting Harrison's statement that Sincavage reached across his desk and grabbed her wrist as she was moving files from the office).

The IRS moved for dismissal or summary judgment, arguing that the ADA does not apply to noncongressional federal workers, that the settlement agreement covered all of Harrison's Title VII retaliation and discrimination claims, and that Harrison failed to state a cause of action based on the alleged assault or to exhaust her administrative remedies for that claim. Harrison responded that she had mistakenly cited the ADA and sought leave to amend the complaint to allege that her disability discrimination claim actually arose under the Rehabilitation Act of 1973, 29 U.S.C. § 791 (1994). Opposing dismissal of her Title VII claims, Harrison submitted an affidavit stating that the settlement agreement settled not *all* of her EEO complaints, but only one informal "precomplaint" that "addressed specific retaliatory actions that had occurred from the time of [the] filing of the November 22 formal complaint and November 30, 1993." Harrison Aff. ¶ 2. She also argued that the settlement agreement could not bar her claims regarding the alleged assault because the assault had not occurred until after she signed the agreement.

The district court, finding it "too late in the process for Plaintiff to amend her complaint," granted the government's motion to dismiss her ADA claim. *See Harrison v. Rubin,* No. 95–2256 (D.D.C. Dec. 19, 1997) ("District Court Order"). Finding Harrison's retaliation and discrimination claims barred by the settlement agreement, the court dismissed the remaining counts. *See id.* Harrison appeals both orders.

II

■ Federal Rule of Civil Procedure 15(a) requires that leave to file an amended complaint "shall be freely given when justice so requires." Explaining its denial of Harrison's motion to amend, the district court stated: "Two years have passed since the filing of her complaint. The case is nearing trial, and the parties have almost concluded their pre-trial discovery. The Court finds that it is too late in the process for Plaintiff to amend her complaint." District Court Order at 1. We review the denial of a motion to amend for abuse of discretion. *See Material Supply Int'l, Inc. v. Sunmatch Indus. Co.,* 146 F.3d 983, 991 (D.C.Cir.1998).

■ Harrison argues that where as here a plaintiff seeks to amend a complaint to add a new legal theory, the district court may deny the motion only if the amendment would prejudice the defendant. According to the government, undue delay is a permissible basis for denying any motion to amend. The government relies on *Foman v. Davis,* but that case simply reversed a district court's unexplained denial of a motion to amend where "the amendment would have done no more than state an alternative theory for recovery." 371

U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Although this Circuit has recognized undue delay as a basis for denying a motion to amend, we have done so only where plaintiffs sought to add new factual allegations. *See, e.g., Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 810 F.2d 243, 247 (D.C.Cir.1987). Where an amendment would do no more than clarify legal theories or make technical corrections, we have consistently held that delay, without a showing of prejudice, is not a sufficient ground for denying the motion. *See, e.g., Material Supply Int'l, Inc.,* 146 F.3d at 991. As we said in *Hanson v. Hoffmann,* the crux of "the liberal concepts of notice pleading embodied in the Federal Rules" is to make the defendant aware of the facts. 628 F.2d 42, 53 (D.C.Cir.1980). "Unless a defendant is prejudiced on the merits by a change in legal theory," we explained, "a plaintiff is not bound by the legal theory on which he or she originally relied." *Id.* at 53 n. 11 (citations omitted).

■ Applying these standards, we conclude that the district court should have granted Harrison's motion to amend to substitute the Rehabilitation Act for the ADA. Harrison sought to add no new factual allegations. In opposing the motion, the government claimed no prejudice. In denying the motion, the district court found no prejudice, and for good reason: Claims and defenses under the two statutes are virtually identical. *See, e.g., Zukle v. Regents of Univ. of Cal.,* 166 F.3d 1041, 1045 n. 11 (9th Cir.1999) ("There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act.").

■ The government nevertheless urges us to affirm the district court because in 1996 Harrison's lawyer, after obtaining a delay to amend the complaint, told the court: "I'm not amending. I'm not filing any other lawsuits. We are going forward on this case, and that's it." 4/2/97 Tr. at 4. But as we read the record, counsel's statement had nothing to do with his later effort to amend Harrison's complaint to correct the erroneous reference to the ADA. When counsel assured the court in 1996 that he was prepared to go forward without further amendments, he was referring only to his decision to add no other counts or allegations based on Harrison's other EEO administrative complaints. *See id.* at 2–4.

We reverse the district court's dismissal of Harrison's disability discrimination claim and remand for further proceedings.

### III

■ Challenging the district court's dismissal of her Title VII claims, Harrison argues that the Precomplaint Agreement settled only an informal complaint concerning certain retaliatory acts by Sincavage from November 22 to November 30, 1993. According to Harrison, the agreement resolved none of the discrimination and retaliation claims included in her November 22 formal complaint, the basis for this lawsuit. She relies on the following passage from her affidavit: "[The settlement] agreement was only to address the informal complaint of December 1, and in no way did it affect the formal complaint of November 22." Harrison Aff. ¶ 4. Harrison also points out that the settlement agreement is titled "Precomplaint Agreement," and that "precomplaint" is the term used to describe an informal complaint, not a formal complaint.

The government originally disagreed with Harrison's position. It argued that the Precomplaint Agreement settled all of Harrison's then-pending EEO administrative complaints, including the November 22 formal complaint. It was on the basis of this argument that the district court dismissed Harrison's Title VII claims. *See* District Court Order at 2.

The government has now abandoned this position. In a motion to remand filed just two days before oral argument, the government advised us that it now agrees with Harrison that "the parties entered

into the Settlement Agreement in order to settle the claims raised by Appellant in an informal complaint pending before the agency" and thus "technically settled only one of Appellant's two administrative complaints." Appellee's Mot. to Remand at 2. Although the government does not tell us *which* informal complaint it believes was settled, it apparently disagrees with Harrison's claim that the parties settled only the complaint alleging retaliation for having filed the November 22 formal complaint. Echoing the reasoning of the agency's EEO office, *see supra* at 252, the government argues that the complaint the parties actually settled concerned the same matters that Harrison complained about in her November 22 formal complaint and that formed the basis of her complaint in district court. According to the government, Harrison conceded during administrative discovery that the matters she raised in her formal complaint and those that she settled in the informal complaint were "the same." Complainant's Interrogatory Answers ¶ 24. Disputing the government's interpretation of her "concession," Harrison insists that she meant only that the two complaints concerned the same general "matters"—i.e., discrimination and retaliation—but not the same incidents and dates.

We do agree with the government about one thing: This issue requires remand. In view of the government's change in position, no one any longer defends the district court's rationale for dismissing the Title VII counts. Both parties agree that the plain language of the settlement agreement is ambiguous, and both now resort to extrinsic evidence.

Under these circumstances, we reverse the dismissal of Harrison's Title VII claims and remand to the district court to determine whether, based on all the evidence, the Precomplaint Agreement bars Harrison from pursuing claims based on the incidents alleged in her November 22 administrative complaint. If the court concludes that the agreement does not bar those claims, then Harrison's allegation of a postsettlement assault can proceed without regard to her failure to exhaust administrative remedies. *See Loe v. Heckler,* 768 F.2d 409, 420 (D.C.Cir.1985) (where the ends of administrative exhaustion have been served by pursuing administrative remedies for the underlying complaint, separate exhaustion of administrative remedies for related post-complaint conduct is not required); *Webb v. District of Columbia,* 864 F.Supp. 175, 184 (D.D.C.1994) ("[T]o force an employee to return to the state agency and the EEOC every time he claims a new instance of discrimination in order to have the courts consider the subsequent incidents along with the original ones would erect a needless procedural barrier.") (internal quotation marks and citation omitted).

*So ordered.*