In re U.S. OFFICE PRODUCTS CO. SECURITIES LITIGATION.

**Phillip H. Arturi and Bruce E. Torello, Plaintiffs,**

v.

**United States Office Products Co., Aztec Technology Partners, Inc., and Jonathan Ledecky, Defendants.**

**Nos. 1999–MS–137(RMU), 1271, 1999–382(AVC).**

United States District Court, District of Columbia.

March 4, 2003.

David Patrick Donovan, Wilmer, Cutler & Pickering, Washington, DC, for U.S. Office Products Co. Securities Litigation.

Herbert Esar Milstein, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Lester L. Levy, Wolf Popper LLP, New York City, Richard B. Dannenberg, Lowey Dannenberg Bemporad & Selinger, White Plains, NY, Andrew L. Barroway, Schiffrin & Barroway, LLP, Bala Cynwd, PA, Jules Brody, Stull, Stull & Brody, New York City, Richard E. Castiglioni, Diserio Martin O'Connor & Castiglioni LLP, Stamford, CT, for lead plaintiff, Anthony W. De Sio, Ray Kostkowski, Raven'S Wood LLP, James May and Todd Semon, plaintiffs.

James Linwood Quarles, III, HALE & DORR, Washington, DC, for plaintiffs, Aztec Technology Partners, James Claypoole.

Daniel S. Sommers, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, for plaintiff, Ray Kostkowski.

David Kessler, Schiffrin & Barroway, LLP, Bala Cynwd, PA, for plaintiffs, Michael E. Williams, James May.

Jill Rosell, Lowey Dannenberg Bemporad & Selinger, White Plains, NY, for plaintiffs, Raven'S Woods L.P., Anthony W. De Sio.

Lester L. Levy, Wolf Popper LLP, New York City, for plaintiffs, Todd Semen, Thomas Lindsey.

Burton Hyman Finkelstein, Finkelstein, Thompson & Loughran, Washington, DC, for plaintiff, Gary L. Marolla.

Aaron L. Brody, Stull, Stull & Brody, New York City, for plaintiffs, Richard J. Letcher, Marilyn Mandel.

Ann H. Rubin, Carmody & Torrance LLP, New Haven, CT, for plaintiffs, Philip H. Arturi, Bruce Torello.

Dickinson Wright, Rock A. Wood, Grand Rapids, MI, for plaintiffs, Gregory F. Vogel, Charles R. Cox.

Daniel S. Sommers, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Richard Bemporad, Lowey Dannenberg Bemporad & Selinger, White Plains, NY, for plaintiff, Class Plaintiffs.

John Christopher Keeney, Jr., Hogan & Hartson, L.L.P., Washington, DC, for defendant, Jonathan Ledecky.

David Patrick Donovan, John Quinn Rounsaville, Jr., Matthew A. Brill, Wilmer, Cutler & Pickering, Washington, DC, for defendant, U.S. Office Products.

Richard A. Roth, Ira S. Meyerowitz, Littman, Krooks, Roth & Ball, New York City, for defendant, Sands Brothers & Co., Ltd.

Wiley E. Mayne, Charles W. Groscup, Denver, Co, for defendant, Navigant International.

David Patrick Donovan, Wilmer, Cutler & Pickering, Washington, DC, for defendants, Thomas I. Morgan, Donald H. Platt, Mark D. Director.

## MEMORANDUM OPINION

URBINA, District Judge.

GRANTING IN PART AND DENYING IN PART DEFENDANT USOP'S MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART DEFENDANT NEW AZTEC'S MOTION TO DISMISS; GRANTING THE PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT

### I. INTRODUCTION

In September 1997, the plaintiffs sold their company, Professional Network Ser-

vices ("PNS"), to defendant U.S. Office Products ("USOP") in exchange for 121,-124 shares of USOP common stock. After the merger and before the plaintiffs sold their USOP stock, the value of the USOP stock decreased significantly. The plaintiffs claim that on February 11, 1998, the defendants agreed to compensate the plaintiffs for the loss in value of the USOP stock. After the defendants failed to provide this compensation to the plaintiffs, the plaintiffs filed a four-count complaint claiming breach of contract, promissory estoppel, negligent misrepresentation, and unfair trade practices.

The plaintiffs originally filed this action in the United States District Court for the District of Connecticut. The Judicial Panel on Multi–District Litigation ("MDL Judicial Panel") transferred the case to this court for pretrial proceedings as part of the USOP Multi–District Litigation ("MDL") action pending in this court. This case and others in the USOP MDL action involve defendants USOP and Jonathan Ledecky, the former Chairman, Chief Executive Officer, and President of USOP; but this is the only USOP MDL case also filed against defendant Aztec Technology Partners ("New Aztec"). The court dismissed defendant Ledecky from this complaint in an earlier Memorandum Opinion. This matter is now before the court on the separately filed motions to dismiss filed by defendants USOP and Aztec. For the reasons set forth below, the court grants in part and denies in part the defendants' motions to dismiss.

## II. BACKGROUND[1]

### A. Summary of the Case[2]

The plaintiffs, Philip Arturi and Bruce Torello, are the former owners of PNS, a corporation located in Connecticut. Am. Compl. ("Compl.") ¶¶ 1, 11. On September 25, 1997, the plaintiffs sold PNS to USOP, a corporation located in the District of Columbia, for 121,124 shares of USOP stock pursuant to a written Agreement and Plan of Reorganization ("Reorganization Agreement"). *Id.* ¶¶ 20, 22. During negotiations regarding USOP's acquisition of PNS, the defendants allegedly made misleading statements and concealed information regarding USOP's business strategy. According to the plaintiffs, the defendants were thereby able to acquire PNS for less than the agreed-upon consideration ("Merger Consideration"). *Id.* ¶ 4.

On February 11, 1998, the plaintiffs and Jack Meehan[3] met with Jonathan Ledecky, the Chairman and former President of USOP, and James Claypoole, the President of USOP's Technology Solutions Group, in the District of Columbia to discuss their concerns about the decreasing value of their USOP stock. *Id.* ¶¶ 13, 39, 40. The plaintiffs state that at this meeting, Messrs. Ledecky and Claypoole unconditionally guaranteed that USOP would remedy the situation by giving the plaintiffs and Mr. Meehan unrestricted stock in a new entity, defendant New Aztec. *Id.* ¶ 40. Additionally, the plaintiffs allege that Mr. Ledecky personally guaranteed that if USOP did not take action to ad-

---

1. Because the court is resolving motions to dismiss, the court treats the facts alleged in the complaint as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

2. On January 2, 2001 the court granted defendant Jonathan Ledecky's motion to dismiss

the claims against him in this complaint for lack of personal jurisdiction. Please refer to that opinion for a detailed recitation of the facts of this case. Mem. Op. dated Jan. 2, 2001 at 2–9.

3. Jack Meehan is a plaintiff in *Meehan et al. v. U.S. Office Products Co. et al.,* a related action which has also been transferred to this MDL case.

dress their concerns after the USOP spin-offs occurred, Mr. Ledecky himself would make the plaintiffs whole. *Id.* Mr. Claypoole stated that the agreement to make the plaintiffs whole ("February 11 Agreement") should remain confidential and that he and Mr. Ledecky would not enter into a formal written agreement with the plaintiffs. *Id.* ¶ 42. The plaintiffs sent letters to both Mr. Claypoole ("Claypoole letter") and Mr. Ledecky ("Ledecky letter") to confirm the oral agreement. *Id.* ¶¶ 42, 45, Exs. A–B. On June 9, 1998, New Aztec, a corporation and a spin-off of USOP that included PNS, was created. *Id.* ¶ 45. When the defendants failed to take action to address the plaintiffs' concerns and make them whole as allegedly promised, the plaintiffs filed this action. *Id.* ¶ 49.

### B. Procedural History

The plaintiffs originally filed this case in the United States District Court for the District of Delaware. Subject-matter jurisdiction in that court was premised on diversity of citizenship under 28 U.S.C. § 1332. The MDL Judicial Panel transferred the case to this member of this court for pretrial proceedings pursuant to 28 U.S.C. § 1407, as part of the USOP MDL action. Subsequently, the plaintiffs filed a four-count complaint focusing on the February 11 Agreement and claiming breach of contract, promissory estoppel, negligent misrepresentation, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). On September 13, 1999 the defendants filed motions to dismiss the plaintiffs' complaint. The court granted defendant Ledecky's motion to dismiss for lack of personal jurisdiction on January 2, 2001.

The court stayed this MDL action several times due to bankruptcy filings, MDL transfers, and mediation efforts. Renewed

Mot. of Class Action Pls. to Restore Case to Active List at 1–2. On January 4, 2002, 10 months after providing notice of its bankruptcy, USOP filed a notice regarding its liquidation and reorganization. On January 17, 2002 New Aztec filed a suggestion of bankruptcy. On December 10, 2002 the U.S. Bankruptcy Court for the District of Massachusetts granted the Bankruptcy Trustee's motion to dismiss New Aztec's bankruptcy case and authorized the trustee to provide the secured creditors with the balance of the New Aztec funds. *In re Aztec Tech. Partners, Inc.,* No. 01–17767 (Bankr.D.Mass. Dec. 10, 2002). New Aztec no longer operates and has no funds, officers, or directors. Mot. to Withdraw at 1. New Aztec's counsel filed a motion to withdraw as counsel on December 19, 2002, explaining it cannot authorize or assist in New Aztec's defense because New Aztec no longer exists. *Id.*

### III. ANALYSIS

### A. The Court Determines that Connecticut is Not the Proper Venue for the Pending Action

Defendant USOP moves the court to dismiss the complaint for improper venue pursuant to 28 U.S.C. § 1391. Mot. to Dismiss (USOP) at 13.[4] The plaintiffs counter that venue is proper in Connecticut. Pls.' Opp'n (USOP) at 6. The plaintiffs also argue that if venue is not proper in Connecticut then justice requires the court to transfer the case to the appropriate district rather than dismiss the action. *Id.* at 10.

In a MDL action, the transferee judge has the same jurisdiction and power over pretrial proceedings that the transferor judge would have in the absence of

---

4. The two remaining defendants, USOP and Aztec, have filed motions to dismiss. Accordingly, when citing to the different motions, oppositions, and replies, the court specifies the corresponding defendant in parentheses.

the transfer. *In re Aircrash Disaster Near Monroe, Mich. on Jan. 9, 1997,* 20 F.Supp.2d 1110, 1111 (E.D.Mich.1998). Because the MDL Judicial Panel transferred the plaintiffs' complaint to the USOP MDL action for pretrial proceedings in this court, this court must determine whether venue would properly lie in the transferor court, the District of Connecticut. *Id.*

■ In a case, such as this one, where jurisdiction is based on diversity, venue is proper in:

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a); Compl. ¶ 6. Barring special circumstances such as pendant venue, the plaintiff in a MDL action has the burden of establishing for each claim that venue is proper in the transferor state. *In re Aircrash Disaster,* 20 F.Supp.2d at 1111; *Washington v. Gen. Elec. Corp.,* 686 F.Supp. 361, 362 (D.D.C.1988); *Am. Homecare Fed'n, Inc. v. Paragon Scientific Corp.,* 27 F.Supp.2d 109, 112 (D.Conn. 1998). Venue is not necessarily limited to one district. *Miller v. Meadowlands Car Imports, Inc.,* 822 F.Supp. 61, 64 (D.Conn. 1993).

In a case similar to the case at bar, two New Jersey companies formed a contract in New Jersey for the purchase of a Lamborghini Diablo. *Id.* One of the parties paying the deposit was a Connecticut resident and two of the $25,000.00 deposit checks were drawn on Connecticut banks. Two years later, the contract was assigned to a party residing in Connecticut. *Id.* at 63–64. The plaintiffs filed the case in Connecticut claiming fraud in the inducement, violations of CUTPA, and breach of contract. *Id.* Pursuant to 28 U.S.C. § 1391(a), the court held that the allegations did not support venue in Connecticut because the substantial part of the events or omissions giving rise to the claim occurred in New Jersey. *Id.* at 64.

■ The plaintiffs in the matter at bar assert that venue is proper in Connecticut pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Connecticut. Pls.' Opp'n (USOP) at 6. The significant events giving rise to the plaintiffs' claims that occurred in Connecticut include the plaintiffs' writing of the Ledecky and Claypoole letters and the financial injury to the plaintiffs. Compl. ¶¶ 43, 45; Pls.' Opp'n (USOP) at 9–10 (explaining that the plaintiffs felt the impact of the breach of contract at their residences and places of business, which are in Connecticut). The critical acts that occurred in the District of Columbia include the negotiation of and assent to the February 11 Agreement, which is the subject of the breach of contract and promissory estoppel claims; and the defendants' misrepresentations and omissions, which are the subject of the negligent misrepresentation and CUTPA claims. *Washington,* 686 F.Supp. at 362; Compl. ¶¶ 31, 34, 36, 40–45, Exs. A–B. As the *Miller* court determined in evaluating the New Jersey acts, this court determines that the acts occurring in the District of Columbia comprise a substantial part of the events or omissions giving rise to the claims in the complaint, while the acts that occurred in Connecticut do not. 28 U.S.C. § 1391(a)(2); *Miller,* 822 F.Supp. at 64. Accordingly, venue is proper in the District of Columbia but not Connecticut.

The judge presiding over a case laying venue in the wrong district "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 529–31 (7th Cir. 2002). The defendants provide no reason why transfer of venue, as opposed to dismissal of the complaint, would be contrary to the interests of justice. Given the complex procedural posture of this action, transfer of venue is more efficient than dismissal, as dismissal could require the plaintiffs to refile their complaint in a different district and begin the MDL procedures anew. Because a transfer of venue to the District of Columbia best serves the interests of justice, the court grants defendant USOP's motion to the extent it asks the court to rule that venue is improper, and denies the motion to the extent that it requests dismissal. *Wild*, 292 F.3d at 529–31.

## B. The Court Determines that Counts I, II, and IV Fail to State a Claim and Count III is not Adequately Plead

In this section, the court addresses the defendants' motions to dismiss the complaint for failure to properly state a claim for breach of contract, promissory estoppel, and CUTPA and grants the defendants' motions in part. The court next considers the defendants' motions to dismiss the negligent misrepresentation count for failure to properly plead reasonable reliance and grants the defendants' motions in part. The motions are denied in part because the court dismisses the CUTPA and negligent misrepresentation claims without prejudice.

### 1. Legal Standard for a Motion to Dismiss for Failure to State a Claim

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests. FED.R.CIV.P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. FED.R.CIV.P. 12(b)(6); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The plaintiff need not plead the elements of a prima-facie case in the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (holding that a plaintiff in an employment-discrimination case need not establish her prima-facie case in the complaint); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C.Cir.2000). Thus, the court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C.Cir.1996).

In deciding such a motion, the court must accept all of the complaint's well-pled factual allegations as true and draw all reasonable inferences in the nonmovant's favor. *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. The court need not accept as true legal conclusions cast as factual allegations. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). While the court must generally limit its review to facts alleged within the complaint, the court may also consider facts of which judicial notice may be taken and documents that are both referenced in the complaint and central to the plaintiff's claim. *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C.Cir.1979); *Lipton v.*

*MCI Worldcom, Inc.,* 135 F.Supp.2d 182, 186 (D.D.C.2001).

## 2. Preliminary Issues

Before turning to the arguments in the motions to dismiss regarding the specific counts, the court addresses two issues that affect the later rulings. The first issue is whether the February 11 Agreement is a contract separate from the Reorganization Agreement or a modification of the Reorganization Agreement. The second issue requires a determination of what law applies to the substantive claims in this diversity action.

### a. Does the February 11 Agreement Modify the Reorganization Agreement Or Are the Two Agreements Separate Contracts?

■ Whether the February 11 Agreement modifies or is separate from the Reorganization Agreement is significant for two reasons. First, the Reorganization Agreement states that it "shall be governed by and construed, interpreted, and enforced in accordance with the laws of Delaware." Reorganization Agreement § 10.8. Thus, the characterization of the February 11 Agreement determines which law the court should apply to the relevant claims. The second reason is that the parties agreed that the Reorganization Agreement "shall not be amended or modified except by a written instrument duly executed by each of the parties hereto. . . ." *Id.* § 10.2. Thus, if the oral February 11 Agreement is a modification of the Reorganization Agreement, it violates the Reorganization Agreement. *Id.*

The plaintiffs claim that the February 11 Agreement and the original Reorganization Agreement are two separate and independent contracts. Compl. ¶¶ 20, 40; Pls.' Opp'n (USOP) at 13. The defendants contend that the February 11 Agreement, which would increase the plaintiffs' Merger Consideration, is merely an attempt to modify the Reorganization Agreement in response to the decrease in value of the USOP stock that constitutes the Merger Consideration. Mot. to Dismiss (USOP) at 18 n. 21; Mot. to Dismiss (New Aztec) at 3.[5]

As noted, when resolving a motion to dismiss, the court is not required to accept legal conclusions presented in a complaint as factual allegations. *Kowal,* 16 F.3d at 1276. Thus, the court is not required to defer to the plaintiffs' assertion that the February 11 Agreement and the original Reorganization Agreement are separate contracts. Rather, the court must evaluate this issue for itself. The court points out that the Reorganization Agreement already addresses circumstances that could result in an adjustment of the Merger Consideration. Reorganization Agreement §§ 1.3–1.4. As the February 11 Agreement addresses a possibility already addressed in the Reorganization Agreement—a need to adjust the Merger Consideration—the facts alleged in the complaint suggest that the court could deem the oral agreement a modification of the Reorganization Agreement. *See generally* Compl. Because this determination requires a factual analysis, and other relevant facts may also exist, the court defers this critical ruling to a later phase of this case. *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229. For the limited purpose of ruling on the pending motions to dismiss, the court adopts the plaintiffs' assertion that the Reorganization Agreement does not bar the possible existence of the February 11 Agreement. *Id.* Consequently, the Reorganization Agreement's choice-of-law provision does not, at this point, gov-

**5.** Defendant New Aztec adopts essentially all of the arguments in defendant USOP's motion to dismiss except for the argument that the case should be dismissed for improper venue. Mot. to Dismiss (New Aztec) at 3 & n. 2.

ern the claims regarding the February 11 Agreement and the Reorganization Agreement does not bar the oral agreement. Reorganization Agreement §§ 10.2, 10.8.

### b. Choice-of-law Analysis

■ In a diversity action transferred pursuant to 28 U.S.C. § 1407(a), the transferee court applies the choice-of-law rules of the state where the transferor court sits. *Ferens v. John Deere Co.*, 494 U.S. 516, 518–19, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990). Because the transferor court in this case sits in Connecticut, this court applies Connecticut choice-of-law rules to determine what substantive law to apply to the contract and tort claims regarding the February 11 Agreement. *Ferens*, 494 U.S. at 519, 110 S.Ct. 1274.

### i. The Contract Claims

■ Pursuant to Connecticut law, the threshold choice-of-law issue is whether there is an outcome-determinative conflict between the applicable laws of the jurisdictions with a potential interest in the case. *Lumbermens Mut. Cas. Co. v. Dillon Co.*, 9 Fed.Appx. 81, 83 (2d Cir.2001). When the interested states' laws relevant to the operative facts produce the same outcome, there is no real conflict between the jurisdictions. *O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13, 25 n. 18 (1986). When no conflict exists for a certain issue, the court may decide that issue using the law that is common to all of the affected jurisdictions. *Haymond v. Statewide Grievance Comm.*, 45 Conn.Supp. 481, 723

A.2d 821, 826 (1997), *aff'd*, 247 Conn. 436, 723 A.2d 808 (1999).

The plaintiffs argue that the laws of both the District of Columbia and Connecticut apply to the contract claims because the laws of the two jurisdictions do not conflict. Pls.' Opp'n (USOP) at 41–43. The defendants argue that the choice-of-law clause in the Reorganization Agreement governs the contract claims. Mot. to Dismiss (USOP) at 18 n. 21. The court has already determined that the choice-of-law provision does not govern the contract claims in this case. Part III.B.2.a *supra*. The court therefore evaluates the law relevant to the contract claims of both the District of Columbia and Connecticut and concludes that they do not conflict.[6] Part III.B.4 *infra*. Consequently, the court applies the laws of both of these affected jurisdictions to the contract claims. *Haymond*, 723 A.2d at 826.

### ii. The Tort Claims

■ The plaintiffs' pleading of CUT-PA and similar Delaware statutes creates a conflict of law for the plaintiffs' tort claims. *Travel Servs. Network, Inc. v. Presidential Fin. Corp.*, 959 F.Supp. 135, 146 (D.Conn.1997) (stating that a court should evaluate the applicability of CUT-PA claims by determining whether it would apply Connecticut law under the choice-of-law rules of the forum state). Connecticut's choice-of-law rules for tort claims dictate that courts should apply the law of the state with the most significant

---

**6.** If the laws of the two jurisdictions did conflict, the court would apply only the laws of the District of Columbia, pursuant to Connecticut's significant relationship test. *Reichhold Chems., Inc. v. Hartford Accident & Indem.*, 243 Conn. 401, 703 A.2d 1132, 1136 (1997) (evaluating (1) the place of contracting; (2) the place of negotiating; (3) the place of performance; (4) the location of the contract's subject-matter; and (5) the place of incorporation and the place of business of the parties). Pursuant to this test, when the place of negotiating the contract and the place of performance are in the same state, courts should generally apply the law of that state. *Id.*; Restatement (Second) of Conflicts of Law § 145 (1971). District of Columbia law would apply to the contract claims because the alleged place of contracting, negotiation, and performance is the District of Columbia. Compl. ¶¶ 11, 22, 40–45; *Reichhold Chems.*, 703 A.2d at 1136.

relationship to the occurrence. *O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13, 21, 23 (1986) (citing Restatement (Second) of Conflicts of Law §§ 6, 145 (1971)); *Abernathy/MacGregor Group, Inc. v. Ellis*, 1994 WL 372726, at *3 (Conn.Super.Ct. July 8, 1994). In applying this test, the court applies the following considerations:

 (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and the uniformity of result, and (g) ease in the determination and application of the law to be applied.

*O'Connor*, 519 A.2d at 22; Restatement (Second) of Conflicts of Law § 6 (1971). The court must also apply the following factors: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Id.* Courts should evaluate contacts involving different locations according to the locations' relative importance with respect to the relevant issues of the case. *O'Connor*, 519 A.2d at 23.

Accordingly, the court applies the most significant relationship test to the facts relating to the plaintiffs' tort claims, which are both based on the defendants' misrepresentations regarding the February 11 Agreement. *O'Connor*, 519 A.2d at 23; *Appleton v. United States*, 2001 WL 45473, at *3 (D.D.C. Jan. 5, 2001) (citing *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C.1999)); *Pro–Fitness, Inc. v. Plankenhorn*, 1995 WL 774494, at *3 (Conn.Super.Ct. Dec. 6, 1995). The court

applies the factors in order of relative importance to the issues of the case. Considering the second factor, the court observes that because the misrepresentations and the oral contract allegedly occurred at the parties' February and May 1998 meetings in the District of Columbia, the conduct causing the injury occurred in the District of Columbia. Compl. ¶¶ 40–45. Turning to the fourth factor of the test, the place where the parties' relationship is centered, the court considers that the parties met in the District of Columbia, their relationship is based on the their common ownership of USOP stock, and USOP is located in the District of Columbia. *O'Connor*, 519 A.2d at 23; Compl. ¶¶ 11, 40–45.

The first factor of the test directs the court to consider the place where the injury occurred. *O'Connor*, 519 A.2d at 23. To the extent that the injury occurs where the economic impact is felt, the plaintiffs felt their financial loss in Connecticut, their place of residence. Considering the residences and places of business of the parties as required by the third factor, the court observes that defendant USOP's place of business is the District of Columbia, USOP's place of incorporation is Delaware, and defendant New Aztec is incorporated in Delaware and has executive offices in Massachusetts. Compl. ¶¶ 11–12. Both plaintiffs reside and work in Connecticut. *Id.* ¶¶ 8, 20.

Evaluating the contacts involving the different locations according to the locations' relative importance with respect to the relevant issues of the case, the court emphasizes that the parties met in the District of Columbia and their relationship centered around the value of the stock of USOP, located in the District of Columbia. *Abernathy/MacGregor Group*, 1994 WL 372726, at *3 (performing choice-of-law

analysis for fraud and CUTPA claims and focusing on the location of the parties' business meetings and not their residences. Therefore, the court concludes that District of Columbia law applies to the tort claims. *O'Connor,* 519 A.2d at 23.

### 3. The Court Dismisses the Claim Alleging Violations of the Connecticut Unfair Trade Practices Act and Its Delaware Counterparts: Count IV

 In Count IV, the plaintiffs claim that the defendants violated CUTPA. CUTPA provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen.Stat. § 42–110b(a). The defendants argue that Count IV fails to state a cognizable claim because it alleges violations of CUTPA and unspecified Delaware law despite the fact that District of Columbia law applies to the plaintiffs' tort claims. Mot. to Dismiss (USOP) at 31–32; Mot. to Dismiss (New Aztec) at 3. As discussed in the court's choice-of-law analysis, the law of the District of Columbia, and not the law of Connecticut, is applicable to the plaintiffs' tort claims.[7] *O'Connor,* 519 A.2d at 23.

Addressing the possibility that the court will grant the defendants' motion to dismiss the CUTPA claim, the plaintiffs request—in a one-sentence footnote—a dismissal without prejudice so that they may replead the unfair trade practices claim using an appropriate statute. Pls.' Opp'n (USOP) at 43 n. 7. The plaintiffs provide no law to support this request, provide no motion to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a), and provide no proposed amended complaint as required by Local Civil Rule 7.1(i). Other

than their general requests for a dismissal with prejudice, the defendants do not specifically address this request and do not assert that the requested amendment would be prejudicial.

This circuit requires trial courts to grant liberally requests for leave to amend. *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir.1996) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Courts almost always grant leave to amend when the complaint fails to properly plead fraud claims with particularity. *Id.* at 1209. In a situation very similar to the situation created by the plaintiff's footnote, this circuit overturned a trial court's denial of leave to amend when the plaintiff had alleged the wrong statute and sought leave to replead the count with the proper statute. *Harrison v. Rubin,* 174 F.3d 249, 253 (D.C.Cir.1999) (reversing the ruling that granted the defendant's motion to dismiss and denied the motion to amend the complaint). Recognizing this precedent, the court grants the plaintiffs' request to replead Count VI using a similar statute from the District of Columbia. *Id.;* Pls.' Opp'n (USOP) at 43 n. 7. Accordingly, the court grants in part the defendants' motions to dismiss Count IV for failure to state a claim on which relief can be granted and dismisses Count IV without prejudice.

### 4. The Court Dismisses the Plaintiffs' Breach of Contract Claim: Count I

In this section, the court addresses the plaintiffs' claim that the defendants breached the contract negotiated on February 11, 1998. As discussed *supra,* the plaintiffs argue that the February 11 Agreement is separate and apart from the

---

**7.** CUTPA claims sound in tort for choice-of-law purposes. *Bailey Employment Sys., Inc.* *v. Hahn,* 655 F.2d 473, 476 (2d Cir.1981).

Reorganization Agreement. Pls.' Opp'n (USOP) at 4. Mr. Ledecky allegedly personally guaranteed USOP's performance of this February 11 Agreement in exchange for the plaintiffs' agreement to refrain from selling their stocks prior to the spin-off of a portion of USOP. Compl. ¶ 40. The plaintiffs assert in Count I that despite their demands and reliance, the defendants refused to comply with the February 11 Agreement. Compl. ¶ 49. In response to this breach of contract allegation, the defendants argue that the breach of contract claim fails to state a proper claim because the parties never reached an agreement. Mot. to Dismiss (USOP) at 18; Mot. to Dismiss (New Aztec) at 3.

▉▉▉▉ An enforceable contract exists only if there is "(1) agreement as to all material terms; and (2) intention of the parties to be bound." *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C.1995) (citations and quotation marks omitted); *see also Thames River Recycling, Inc. v. Gallo*, 50 Conn.App. 767, 720 A.2d 242, 251 n. 7, 261 (1998). "Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract." *Rosenthal v. Nat'l Produce Co.*, 573 A.2d 365, 369–70 (D.C.1990) (quoting 1 A. Corbin, Corbin on Contracts § 95, at 394 (1963)); *see also Herbert S. Newman & Partners v. CFC Constr. Ltd. Partnership*, 236 Conn. 750, 674 A.2d 1313, 1322 (Conn.1996) (stating there is no mutual assent to an accord when the parties disagree as to payment terms). The terms of a contract must be definite enough that a court can identify the obligations that it should enforce. *Rosenthal*, 573 A.2d at 370.

▉▉▉▉ To have a meeting of the minds, there must be a mutual agreement as to the substance and terms of a contract. *Jack Baker*, 664 A.2d at 1238;

*Owen v. Owen*, 427 A.2d 933, 937 (D.C. 1981); *Geary v. Wentworth Labs., Inc.*, 60 Conn.App. 622, 760 A.2d 969, 972–73 (2000) (stating no contract is formed when essential matters are left open for further consideration). Material terms include price, payment terms, duration, and the identity of the parties involved. *Jack Baker*, 664 A.2d at 1238; *Anchorage–Hynning & Co. v. Moringiello*, 697 F.2d 356, 363–64 (D.C.Cir.1983) (applying District of Columbia law). Without agreement as to the parties or terms, there is no way of knowing who is bound by the contract or what they are required to do. *Id.* Finally, "if there is a discrepancy between the terms of an instrument annexed to a pleading and its interpretation in the pleading, the former must prevail." *Munter v. Lankford*, 127 F.Supp. 630, 633 (D.D.C.1955) (stating that this is an elementary rule); *see also ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n. 8 (3d Cir.1994). A court can dismiss claims for failure to state a claim on which relief can be granted when the complaint includes facts demonstrating that success on the merits is impossible-in other words, when the plaintiffs "plead [themselves] out of court." *Sparrow*, 216 F.3d at 1116.

▉▉▉▉ One problem with the alleged contract or promise is that the complaint and the Ledecky and Claypoole letters describe the parties, debtors, and calculation of the debt differently. First, the Ledecky and Claypoole letters vary the identity of the alleged contract's parties and debtors. Compl. Exs. A–B. The complaint states that the contract binds the plaintiffs, USOP, and Mr. Ledecky and states that the latter two parties will compensate the plaintiffs using New Aztec stock. *Id.* ¶¶ 40–45. However, the Ledecky letter states that "[o]ur understanding is that [New Aztec] will provide Phil Arturi, Bruce Torello, Jack Meehan, and the Aztec

International shareholders with exercisable stock options...." *Id.* Ex. B. This letter does not mention a personal guarantee by Mr. Ledecky or an obligation by USOP. *Id.* This contradiction within the complaint shows that a critical material term-namely, the identity of the debtors—was not sufficiently definite. *Rosenthal,* 573 A.2d at 369–70 (stating that material terms to a contract cannot be indefinite); *Jack Baker,* 664 A.2d at 1238; *Geary,* 760 A.2d at 972–73.

A second contradiction exists regarding the method used to calculate the amount of money or stock options that the debtor would owe the plaintiffs. The plaintiffs first detail the expected payment as the price differential between the Merger Consideration, as defined in the Reorganization Agreement, and the stock valued at the end of closing on the trigger date (the point when the parties will calculate the value of the plaintiffs' USOP stock). Compl. ¶ 40, Ex. A. The Claypoole letter seems to rely on the spin-off date, April 25, 1998, as the trigger date; while the complaint and the Ledecky letter rely on a date, September 7, 1998, anticipated to be 90 days after a later spin-off date. *Id.* ¶¶ 47–49, Exs. A–B. Again, the plaintiffs vary a material term of the alleged contract. *Rosenthal,* 573 A.2d at 369–70; *Jack Baker,* 664 A.2d at 1238 (explaining that for a contract to exist, the parties must agree to all of its material terms); *Housing Auth. v. Melvin,* 12 Conn.App. 711, 533 A.2d 1231, 1233 (1987).

In addition to these contradictions, the Ledecky letter demonstrates indefiniteness by referring to the contract as a proposal, stating "we are open to *alterna-*

*tive* measures within this ninety-day window to achieve this if you feel the stock option *proposal* is unworkable for any reason" and "[i]f our *understanding differs* from yours, please let us know as soon as possible." *Id.* Ex. B (emphasis added). Critical to the formation of an oral contract is that all parties intend to be bound by their oral agreement. *Jack Baker,* 664 A.2d at 1238; *Geary,* 760 A.2d at 972–73. The Ledecky letter indicates that the plaintiffs did not assume that Mr. Ledecky intended to be bound by the alleged February 11 Agreement. Compl. Ex. B. Furthermore, Mr. Claypoole's alleged statement that the parties should not enter into a formal written agreement and that Mr. Ledecky would not at that time accept a letter detailing the agreement also indicate that the defendants did not intend to be bound by any agreement.[8] *Id.* ¶ 42.

In sum, the February 11 Agreement is indefinite and its terms are contradictory. For the parties to be bound by their oral agreement, the agreement must show an intent to be bound, must contain all material terms, and must not be vague or indefinite. *Jack Baker,* 664 A.2d at 1238; *Rosenthal,* 573 A.2d at 369–70; *Geary,* 760 A.2d at 972–73. The February 11 Agreement is not complete, as demonstrated by the Claypoole and Ledecky letters wherein the plaintiffs vary the material terms, and does not indicate an intent to be bound, as demonstrated by the use of the words "proposal" and "alternative measures" in the Ledecky letter. *Id.;* Compl. ¶¶ 40–45, Exs. A–B. Thus, the court grants the defendants' motions to dismiss Count I because the complaint demonstrates that no facts could entitle the plaintiffs to relief for

---

8. This conclusion is especially strong when considered in light of the Reorganization Agreement's prohibition of oral modifications. Reorganization Agreement § 10.2. Regardless of whether the February 11 Agreement is a modification of the Reorganization Agreement or is a separate and distinct contract, the plaintiffs must have known that the agreement *could* be construed as a prohibited oral modification. *Jack Baker,* 664 A.2d at 1238 (requiring an intent to be bound by the contract)

these claims. *Sparrow*, 216 F.3d at 1116; *Conley*, 355 U.S. at 46–47, 78 S.Ct. 99.

### 5. The Court Dismisses the Claim for Promissory Estoppel: Count II

In response to the plaintiffs' promissory estoppel claim regarding the statements made in 1998, the February 11 Agreement, the defendants argue that given the facts plead by the plaintiffs, no promise could have existed and thus the promissory estoppel claim fails to state a proper claim. Mot. to Dismiss (USOP) at 18; Mot. to Dismiss (New Aztec) at 3. The plaintiffs counter that the facts in the complaint do allege a definite promise and the plaintiffs reasonably relied on this promise. Pls.' Opp'n (USOP) at 28–31.

▮▮▮▮ To establish a promissory estoppel claim, the plaintiffs must show (1) a promise; (2) that the promise reasonably induced reliance on it; and (3) that the promisee relied on the promise to his or her detriment. *Simard v. Resolution Trust Corp.*, 639 A.2d 540, 552 (D.C.1994) (citing *Choate v. TRW, Inc.*, 14 F.3d 74, 77 (D.C.Cir.1994) (explaining that an assurance is not a promise)); *Chotkowski v. State*, 240 Conn. 246, 690 A.2d 368, 380 (1997). The promise must be definite, as reliance on an indefinite promise is not reasonable. *Granfield v. Catholic Univ. of Am.*, 530 F.2d 1035, 1040 (D.C.Cir.1976); *In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1250 (3d Cir.1989); *D'Ulisse–Cupo v. Bd. of Dirs. of Notre Dame High School*, 520 A.2d 217, 221 (Conn.1987). Finally, though a promise need not be as specific and definite as a contract, it must still be a promise with definite terms on which the promisor would expect the promisee to rely. *Bender v. Design Store Corp.*, 404 A.2d 194, 196 (D.C.1979) (citing *Granfield*, 530 F.2d at 1040); *D'Ulisse–Cupo*, 520 A.2d at 221.

▮▮ As discussed *supra*, the court has determined that the February 11 Agreement is not an enforceable contract because the terms and identity of the primary debtor are unclear and the agreement is vague and indefinite. Part III. B.4 *supra;* Compl. ¶¶ 40–45, Exs. A–B. For these reasons—which are explained in the previous subsection of this opinion—the plaintiffs' complaint, including the attached Ledecky and Claypoole letters, provides so many facts that it demonstrates that the promise was neither clear nor definite. *Sparrow*, 216 F.3d at 1116; *Simard*, 639 A.2d at 552 (stating that vagueness of terms negate the inference that a promise of employment existed); *D'Ulisse–Cupo*, 520 A.2d at 221.

The promissory estoppel claim also fails because the plaintiffs could not have reasonably relied on the statements, and the defendants would not expect reliance, when the statements varied how their compensation would be calculated and who the primary debtor was. Compl. ¶¶ 40–45, Exs. A–B; *Granfield*, 530 F.2d at 1040–41 (affirming ruling that statements were too confusing and contradictory to form a promise); *In re Phillips Petroleum Sec. Litig.*, 881 F.2d at 1250 (reliance on an indefinite promise is not reasonable); *Stewart v. Cendant Mobility Servs. Corp.*, 2002 WL 442385, at *4 (Conn.Super. Feb.21, 2002). Reliance on the oral statements is also unreasonable given that the parties were aware that the Reorganization Agreement could bar oral modifications and the defendants explicitly refused to commit to the agreement in writing. Compl. ¶ 42; Reorganization Agreement § 10.2; *Bender*, 404 A.2d at 196 (explaining that no promise existed when the agreement was not in writing and the appellees had expressed that no agreement would exist until the parties signed a lease). Accordingly, the court grants the defendants' motions to dismiss Count II for failure to state a cognizable claim. *Sparrow*, 216 F.3d at 1116; *Conley*, 355 U.S. at 47, 78 S.Ct. 99.

### 6. The Court Dismisses the Negligent Misrepresentation Claim: Count III

In this count, the plaintiffs allege that the defendants negligently misrepresented that they would make the plaintiffs whole. Compl. ¶ 40–45. Addressing the defendants' motions to dismiss the negligent misrepresentation count, the court first discusses the general requirements for negligent misrepresentation and then determines that the plaintiffs failed to properly plead reasonable reliance.

■ Under District of Columbia law, a claim for negligent misrepresentation requires a showing that (1) the defendant made a false statement or omission of a fact, (2) the statement or omission was in violation of a duty to exercise reasonable care, (3) the false statement or omission involved a material issue, (4) the plaintiffs reasonably and to their detriment relied on the false information, and (5) the defendant's challenged conduct proximately caused injury to the plaintiffs. *Appleton,* 2001 WL 45473, at *3 (citing *Redmond,* 728 A.2d at 1207); *Steele v. Isikoff,* 130 F.Supp.2d 23, 34 (D.D.C.2000); *Remeikis v. Boss & Phelps, Inc.,* 419 A.2d 986, 990 (D.C.1980).

■ As with fraud claims, negligent misrepresentation claims must adequately allege *all* of the required elements, including allegations that the plaintiff reasonably relied on the alleged misrepresentation.[9] *Alicke v. MCI Communications Corp.,* 111 F.3d 909, 912 (D.C.Cir.1997) (applying District of Columbia law to dismiss claims of fraud and negligent misrepresentation); *Smith v. Wash. Metro. Area Transit Auth.,* 1997 WL 182286, at *5 (D.D.C. Apr. 4, 1997) (same). In the commercial context, not only must the plaintiffs plead reasonable reliance, but the plaintiffs must plead reliance that is objectively reasonable. *Id.*

The court now turns to the defendants' argument that the court should dismiss Count III (the negligent misrepresentation claim) because the plaintiffs fail to adequately allege reasonable reliance. Mot. to Dismiss (USOP) at 30; Mot. to Dismiss (New Aztec) at 3. Because the parties' relationship is commercial, District of Columbia law requires the fraud and negligent misrepresentation claims to include allegations of reliance that are objectively reasonable. *Alicke,* 111 F.3d at 912.

■ Construing the complaint in the plaintiffs' favor, the court considers several facts regarding the February 11 Agreement that are critical to the court's reliance analysis: defendant Ledecky claimed that he knew the stock prices would increase, defendant Ledecky stated that defendant Ledecky or USOP would compensate the plaintiffs for the loss in value of their USOP stock, the method and amount of compensation was unclear, the agreement was oral, the defendants refused to sign a written agreement, the defendants told the plaintiffs that the agreement was confidential, and the Reorganization Agreement prohibits oral modifications. Compl. ¶¶ 40–45; Reorganization Agreement § 10.2; *Alicke,* 111 F.3d at 912. In the similar context of fraud, the District of Columbia Court of Appeals has explained that "[o]ne cannot close his eyes and blindly rely upon the assurances of another absent some fiduciary relationship or

9. Similar to the requirements for pleading fraud claims, "failure to meet the pleading requirements of Rule 9(b) may also be fatal to plaintiffs' claims of negligent misrepresentation." *Shields v. Wash. Bancorporation,* 1992 WL 88004, at *9 (D.D.C. Apr. 7, 1992) (citing

*Marra v. Burgdorf Realtors, Inc.,* 726 F.Supp. 1000, 1007 (E.D.Pa.1989) (applying Pennsylvania law)); *Nelson v. Nationwide Mortgage Corp.,* 659 F.Supp. 611, 618 (D.D.C.1987) (requiring particularity for negligent misrepresentation claims).

emergency...." *Hercules & Co. v. Shama Rest. Corp.,* 613 A.2d 916, 934 (D.C.1992). Here, the parties had a commercial and arm's-length, not a fiduciary, relationship.[10] Also, the court has already determined that the statements were too indefinite and contradictory to create a promise or contract. Part III.B.4–5 *supra.* In light of the facts set forth in this paragraph, the plaintiffs' reliance on the alleged misrepresentations regarding the compensation by the defendants resembles blind reliance and not objectively reasonable reliance. *Hercules,* 613 A.2d at 934; *Alicke,* 111 F.3d at 912 (holding that reliance was unreasonable because even though all long-distance calls were billed by the defendant in whole-minute increments, "no reasonable customer could actually believe that each and every phone call she made terminated at the end of a full minute").

Further evaluating the reasonableness of the reliance, the court considers § 10.2 of the Reorganization Agreement that requires any modification of the Reorganization Agreement to be in writing and executed by each of the parties to the agreement. The February 11 Agreement was oral and did not include all of the parties to the Reorganization Agreement. Compl. ¶¶ 40–45. The plaintiffs were aware of § 10.2 as they signed the contract after negotiating, drafting, and reviewing it with their legal counsel. Reorganization Agreement §§ 10.11–10.12. District of Columbia courts have ruled that no reasonable trier of fact could conclude that a plaintiff reasonably relied on oral representations contradicted by express written provisions. *Smith,*

1997 WL 182286, at *5 (holding that no reasonable trier of fact could conclude that the plaintiff reasonably relied on oral representations of his superior that were contradicted by the express written provisions of the manual governing employment); *Hercules,* 613 A.2d at 934 (determining that reliance on statements contradicted by the contract and not in the contract was unreasonable). Although the plaintiffs were aware of § 10.2, and although the February 11 Agreement allegedly modified the Merger Consideration that USOP would pay to the plaintiffs, the plaintiffs have plead no facts to demonstrate why a reasonable person would be so certain that the February 11 Agreement was outside of the scope of § 10.2 that they would detrimentally rely on this conclusion. *Id.*

In the similar context of failure to plead fraud with particularity, the D.C. Circuit has ruled that a dismissal with prejudice is warranted only when the trial court determines that there exist no facts, consistent with the challenged complaint, that could cure the pleading deficiency. *Firestone,* 76 F.3d at 1208. While the court is not aware of any facts that could demonstrate reasonable reliance regarding the February 11 Agreement, the court recognizes that such facts might exist and therefore dismisses the negligent misrepresentation claim without prejudice. *Id.; Alicke,* 111 F.3d at 912. For these reasons, the court grants the defendants' motions to dismiss Count III for failure to properly plead reasonable reliance, but denies the motions to the extent that they request a dismissal with prejudice.[11] *Firestone,* 76 F.3d at 1208; *Alicke,* 111 F.3d at 912.

**10.** Facts in the Reorganization Agreement demonstrate that the Reorganization Agreement was an arm's-length transaction: the plaintiffs were represented by legal counsel during the negotiation and execution of the contract, and the contract was the mutual

product of the consultation, negotiation, and agreement of the parties to the agreement. Reorganization Agreement §§ 10.11–10.12.

**11.** As the court dismisses Count III for failure to properly plead reasonable reliance, the

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the motions to dismiss of defendants USOP and New Aztec. The court grants defendant USOP's motion to the extent that it requests a ruling of improper venue but denies the motion to dismiss for improper venue. If the plaintiffs file an amended complaint within 60 days, then the court will direct the Clerk of the Court to transfer the venue of the complaint to the District of Columbia. The court also rules that the plaintiffs failed to state a claim upon which relief may be granted for Counts I–II and IV. Consequently, the court grants the defendants' motions for dismissal of these counts. Because the court dismisses Count IV without prejudice, the court denies the motions to dismiss Count IV to the extent they request a dismissal with prejudice. If the plaintiffs intend to amend their complaint to replead this count using applicable law, they must do so within 60 days. The court also determines that Count III fails to adequately plead negligent misrepresentation and thus dismisses this count without prejudice, granting the motions to dismiss this count but denying them to the extent they request a dismissal with prejudice. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 4th day of March, 2003.

---

court need not reach the defendants' additional arguments regarding deficiencies in the

## *ORDER*

GRANTING IN PART AND DENYING IN PART DEFENDANT USOP'S MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART DEFENDANT NEW AZTEC'S MOTION TO DISMISS; GRANTING THE PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT; GRANTING HALE AND DORR LLP'S MOTION TO WITHDRAW AS COUNSEL FOR NEW AZTEC

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this 4th day of March, 2003, it is

**ORDERED** that defendant USOP's motion to dismiss is **GRANTED in part** and **DENIED in part**; and it is

**FURTHER ORDERED** that defendant New Aztec's motion to dismiss is **GRANTED in part** and **DENIED in part**; and it is

**ORDERED** that the plaintiffs' motion for leave to amend the complaint is **GRANTED** and the plaintiffs may file an amended complaint within 60 days of the date of this order; and it is **FURTHER ORDERED** that Hale and Dorr LLP's motion to withdraw as counsel for New Aztec is **GRANTED**.

**SO ORDERED.**